IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| BARBARA BUCKNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. _____ |
| vs. | ) | |
| | ) | |
| BUSINESS HEALTH SOLUTIONS, P.C. | ) | HON. |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

PLAINTFF, BARBARA BUCKNER, by and through her attorneys, CARLA D. AIKENS, P.C., submits the following Complaint against DEFENDANT BUSINESS HEALTH SOLUTIONS, P.C..

## JURY DEMAND

COMES NOW PLAINTIFF, BARBARA BUCKNER, and hereby makes her demand for trial by jury.

## JURISDICTION

1.      Plaintiff Barbara Buckner was a resident of Wayne County in the State of Michigan at all times relevant to this action.

2.      Defendant Business Health Solutions, P.C. is a Domestic Professional Corporation with a continuous and systematic place of business at 375 Eureka, Suite B, Wyandotte MI 48192.

3.      This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

1

4.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

**VENUE**

5.      Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

**STATEMENT OF FACTS**

6.      Plaintiff was hired as medical assistant in February of 2016 at Defendant's Wyandotte BHS Clinic at the rate of $14.00 per hour.

7.      Defendant operates nine clinics in southeast Michigan that provide health care services.

8.      Plaintiff was successful at her job. In fact, she consistently received excellent reviews and was known to be a hard and dedicated worker and was even tasked with training newly hired employees.

9.      Before Plaintiff was hired, and during the hiring process, she was promised a $2.00 raise once she had accrued six months of time as an employee for Defendant.

10.     Plaintiff was employed by Defendant for about twenty months. However, she never received the raise that she was promised, despite the fact she would consistently bring up the issue with Defendant's agents.

11.     Defendant had a practice of promising raises and bonuses but not fulfilling its promises, and when the employee pursued these contractual promises, Defendant would retaliate against the employee until the employee quit or was terminated.

12.     The above practice was most prevalent, if not exclusively used, with Black female employees, including "Eboni", "Lakeisha" and "Chara."

2

13.     On or around December 12, 2016, Plaintiff contracted pneumonia due to the fact that she had overworked her body without the proper rest.

14.     Plaintiff submitted her paperwork to the processing insurer, Aflac, for her short-term disability.

15.     However, it was not until on or around January 5, 2017, nearly a month after Plaintiff needed the paperwork to be in, that Ms. Anita Sanders finally submitted the proper documentation to Aflac.

16.     This delay caused Plaintiff undue hardship and stress because she was forced to live without any income.

17.     Plaintiff was given permission to return to work on December 14, 2016.  However, due to the severity of her condition and symptoms, she was seen again at St. Mary Mercy Hospital's emergency department, at which point the hospital's physicians took Plaintiff off of work until December 19, 2016.

18.     However, because of the mounting stress from not receiving any income, as Defendant had not submitted the required paperwork to Aflac, Plaintiff was forced to return to work against her doctor's orders and her well-being.

19.     Starting around the time that Plaintiff's doctor ordered her off of work for pneumonia, Defendant's supervisory agents, mainly Ms. Sanders and, at times, Ms. Ikisha McCarthy, would unfairly and unequally scrutinize Plaintiff's work; the scrutiny reached the point that Plaintiff was in fear of going to work because she was certain she would be verbally abused, penalized, written up, and eventually fired for negligible mistakes that all other employees committed, but were never reproached.

20.     Moreover, Ms. Sanders was known to talk about Plaintiff's medical conditions freely and openly with other employees.

21.     Ms. Sanders was known to belittle and disregard Plaintiff's genuine medical concerns, which culminated in an environment in which Plaintiff did not feel safe.

22.     Moreover, Defendant's agents were retaliatory to Plaintiff. For instance, even though she had already scheduled to take off, Ms. Sanders and Ms. Diane Lewis revoked the two days Plaintiff had off: Christmas Day and Plaintiff's mother's birthday.

23.     Ms. Sanders and Ms. Lewis wrongfully claimed that Plaintiff had not accrued the mandatory 1,500 hours of work to be eligible for the days off, despite the fact that Plaintiff had been working upwards of 60 hours a week for ten months and had accumulated well over 1,500 hours.

24.     Upon information and belief, Plaintiff was the only employee at the Wyandotte location from whom Defendant's agents wrongfully withheld and revoked days off.

25.     This unfair and unequal scrutiny of Plaintiff's work intensified after her January diagnosis of Acute Thromboembolic Disease ("ATD") and continued until Plaintiff was constructively discharged.

26.     In January of 2017, Plaintiff went down to part time hours at work because of concerns over her health.

27.     Plaintiff decided to cut to part time generally because she was experiencing blood clots and complications from stress and exhaustion from being overworked, coupled with the fact that she had recently been accepted into nursing school.

28.     Before Plaintiff cut her hours, she specifically asked about the ramifications of changing to the status of part-time employment. However, Defendant failed to inform

Plaintiff that she would lose her medical benefits if she were no longer a full-time employee.

29. On or around January 15, 2017, when Plaintiff was in the intensive care unit with ATD, Plaintiff discovered that she no longer had medical coverage through Defendant.

30. This realization added extreme financial and health anxiety, fear, and worry.

31. As a result of Plaintiff's diagnosis and follow-up treatment, Plaintiff's physician ordered her out of work until January 30, 2017.

32. However, for the second time, Ms. Sanders did not submit Defendant's portion of the necessary documentation in a timely manner so that Plaintiff could receive short-term disability benefits.

33. In both instances, when Plaintiff attempted to contact Defendant regarding the failure to submit the necessary paperwork for short-term disability, Defendant's agents were unhelpful, seeming to cause more delays in retaliation for her requests to have Defendant process its part of her paperwork.

34. Plaintiff further filed grievances for Defendant's agents' conduct but nothing was done.

35. The hostility reached its apex when Ms. Sanders attempted to force Plaintiff to submit resignation paperwork in order to have her short-term disability paperwork processed. Plaintiff saw this as a clear and egregious attempt to terminate Plaintiff because of a disability and her use of time off to treat this disability.

36. Defendant's retaliatory delay in not submitting its documentation supporting Plaintiff's short-term disability paperwork, again, caused Plaintiff undue hardship, stress, and anxiety, and the direct attempt to terminate Plaintiff compounded Plaintiff's fear, anxiety, and worry and further exasperated Plaintiff's medical conditions.

37.  In May of 2017, Plaintiff's physician filed a Certification of Health Care Provider for Employee's Serious Health Condition ("Certificate of Health Provider") due to, among other things, Defendant's continuous disregard for Plaintiff's health, the undue burden and pressure Defendant's supervisory agents constantly posed on Plaintiff, and the fact that Plaintiff's serious health concerns and disability had a negative effect on Plaintiff's employment and working conditions.

38.  Plaintiff's physician feared work would increase the likelihood that Plaintiff would suffer a stroke or heart attack, and in the Certificate of Health Provider, Plaintiff's physician ordered that Plaintiff be off of work from May 8, 2017 to June 8, 2017.

39.  On or around May 8, 2017, Plaintiff's physician and Plaintiff had all the necessary paperwork submitted to Aflac.

40.  However, for the third time, Ms. Sanders delayed in submitting Defendant's part of the necessary paperwork so that Plaintiff could receive short-term disability benefits, which continued to add to Plaintiff's stress and anxiety during this difficult time.

41.  It was not until four days after an insurance auditor contacted Defendant, on May 23, 2017, that Defendant submitted the paperwork to complete Plaintiff's short-term disability benefits application.

42.  Further retaliating and adding to Plaintiff's financial stress, Ms. Sanders and Ms. McCarthy did not include Plaintiff on July's work schedule, claiming that Defendant did not have the proper FMLA paperwork to reinstate Plaintiff.

43.  However, upon information and belief, Defendant had all necessary paperwork submitted.

44. Upon information and belief, Defendant did not open Plaintiff's file to check for the proper paperwork, instead claiming that it was not there, so that Plaintiff would not be able to be placed on the schedule when she returned from leave.

45. For nearly all of Plaintiff's medical leaves, she was required to take Family and Medical Leave Act time by Defendant, and she provided Defendant with as much notice as her health permitted.

46. However, Ms. Sanders only seemed to have an issue submitting Plaintiff's documents with regard to her short-term disability.

47. In July 2017, for the last time, Plaintiff brought to Defendant's attention that she had not yet received the raise that she had been promised approximately 17 months prior, nor any other increases in pay from her original rate of $14.00 per hour.

48. Following this conversation, Plaintiff did not receive a raise.

49. On or around July 27, 2017, Plaintiff had a conversation with Ms. Sanders about her job performance, in which Plaintiff was given exemplary reviews and was told that she excelled at her job.

50. At the end of the discussion, and for the final time, Plaintiff asked about the raise she had been promised over 17 months prior.

51. However, for the first time, Plaintiff was told that she had not been chosen to receive a bonus by the system Defendant used to assign bonuses.

52. Plaintiff had never heard of this system before.

53. Upon information and belief, Defendant did not have any such bonus system that applied to her position, or the system Defendant uses to assign bonuses disparately impacts disabled employees including Plaintiff.

54.     Further, Plaintiff noted that Defendant had given raises to co-workers of Plaintiff's who were less experienced, skilled, and qualified in general while she did not receive the original raise she was promised at the time of her hiring.

55.     Even worse, Plaintiff had co-workers whom Defendant hired in at $14.00 an hour or more, who were less experienced, skilled, and qualified to work at a medical center.

56.     To add insult to injury, Defendant would ask Plaintiff to train these workers who were less skilled and making more money than her.

57.     On or around August 10, 2017, Plaintiff informed Ms. McCarthy that she did not think she could continue working because she was ill.

58.     Ms. McCarthy responded that "the job still has to be done," which Plaintiff took to mean that she was not allowed to leave and was too intimidated to ask again.

59.     As a result, soon after Plaintiff's shift ended, she was again admitted to the emergency room.

60.     Due to her medical impairments, Plaintiff's physician ordered her out of work until August 14, 2017.

61.     However, because of her fear of the consequences of what Defendant would do and say if she failed to show up, Plaintiff went into work on August 13, 2017.

62.     Less than two weeks later, on or around August 21, 2017, Plaintiff was forced to make another emergency room visit, at which point her physician disabled her from work for three days.  The doctor cited the effect that Defendant and Plaintiff's work was having on Plaintiff's health.

63.     Following this visit, Plaintiff informed Defendant's agents that she would be out of work for a couple of days due to her doctor's orders.  However, Ms. McCarthy again

pushed back and responded by demanding that Plaintiff find a replacement for her shift if she was not going to be working.

64.     Plaintiff could not find a replacement, and due to the anxiety and fear over Defendant's possible disciplinary actions, Plaintiff informed Defendant that, despite her doctor's orders, she would come in on a day she was not supposed to work.

65.     However, instead, on or around August 31, 2017, after due consideration, Plaintiff decided that it was not wise to continue to risk her physical and mental health for her employer and submitted to Defendant a letter of resignation.

66.     In her letter, Plaintiff cited unequal treatment, a negative and hostile workplace environment, retaliation, unnecessary scrutiny, and the deterioration in her health and safety as a result of work as the basis for her decision.

67.     Plaintiff's inability to receive any internal redress from Defendant forced Plaintiff to choose between two options: (1) resign and improve her health or (2) continue working and have her health decline.

68.     On or around March 2, 2018, Plaintiff filed a charge of discrimination with the Detroit office of the Equal Employment Opportunity Commission ("EEOC") on the basis of her (1) sex; and (2) disability.

69.     In a letter dated October 1, 2018, the EEOC issued Plaintiff a Notice of her Right to Sue.[1]

70.     Plaintiff requests relief as described in the Prayer for Relief below.

---

[1]     *See* Exhibit A; Plaintiff's Right to Sue.

<u>COUNT I</u>
**DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990 42 U.S.C. § 12101, et seq. ("ADA")**

71.   Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

72.   At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the ADA, 42 U.S.C. § 12101, et seq.

73.   A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

74.   Plaintiff has been diagnosed with Acute Thromboembolic Disease ("ATD"), blood clots, severe high blood pressure, as well as other diagnoses, and as a result, Plaintiff has a disability within the meaning of the ADA.

75.   Plaintiff's disabilities  under the  ADA  are qualified, meaning that, with reasonable accommodation, she can perform the essential functions and duties of her job.

76.   Section 12112(a) of the ADA, makes it illegal to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

77.   As outlined throughout this Complaint, Plaintiff was discriminated against on the basis of her disability in regard to advancement, discharge, compensation, and other terms, conditions, and privileges of employment when, including, but not limited to:

   a.   Defendant began unequally and unfairly scrutinizing Plaintiff's work only after she requested time off for her disability;

    b. Defendant delayed submitting Plaintiff's short-term disability paperwork;

    c. Defendant stated that Plaintiff had to resign in order to receive her short-term disability benefits;

    d. Defendant attempted to make Plaintiff return to work early despite it contradicting her doctor's orders;

    e. Defendant told Plaintiff that she must find a replacement or be at work, even though Plaintiff's physician had ordered her off of work;

    f. Defendant purposely did not put Plaintiff on the schedule when she was healthy and ready to return to work;

    g. Defendant tasked Plaintiff with training less experienced employees who were paid more or as much as Plaintiff; and

    h. Other instances to be revealed during discovery.

78. Also, upon information and belief, the system Defendant used to assign bonuses disparately impacts disabled employees, and specifically Plaintiff.

79. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

80. But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor constructively discharged.

81. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

82. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

83. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
### DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITY ACT, MCL 37.1201, et seq. ("PWDCRA")

84. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

85.  At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the PWDCRA.

86.  A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

87.  Plaintiff has a disability within the meaning of the PWDCRA.

88.  Plaintiff's disability is qualified, meaning that, with reasonable accommodation, she can perform the essential functions and duties of his job.

89.  MCL 37.1202(b) makes it illegal to, "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability … that is unrelated to the individual's ability to perform the duties of a particular job or position."

90.  Plaintiff was constructively discharged because Defendant attempted to make her work against her doctor's orders.

91.  Moreover, and as laid out in the statement of facts, Defendant otherwise discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment because of her disability when, including, but not limited to:

   a.  Defendant began unequally and unfairly scrutinizing Plaintiff's work only after she requested time off for her disability;
   b.  Defendant delayed submitting Plaintiff's short-term disability paperwork;
   c.  Defendant alleged that Plaintiff had to resign in order to receive her short-term disability benefits;
   d.  Defendant attempted to make Plaintiff return to work early despite it contradicting her doctor's orders;
   e.  Defendant told Plaintiff that she must find a replacement or be at work, even though Plaintiff's physician had ordered her off of work;

    f.   Defendant purposely did not put Plaintiff on the schedule when she was healthy and ready to return to work;

    g.   Defendant tasked Plaintiff to train employees with less experience who made more or as much as Plaintiff; and

    h.   Other instances to be revealed during discovery.

92.    Also, upon information and belief, the system Defendant used to assign bonuses disparately impacted disabled employees, and specifically Plaintiff.

93.    Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

94.    But for Defendant's illegal discrimination Plaintiff would not have been damaged nor constructively discharged.

95.    As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

96.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

97.    Plaintiff requests relief as described in the Prayer for Relief below.

## <u>COUNT III</u>
## INTERFERENCE AND RETALIATION IN VIOLATION OF THE ADA

98.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

99.    At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the ADA.

100.    A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting

Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

101.    Plaintiff has been diagnosed with Acute Thromboembolic Disease ("ATD"), blood clots, severe high blood pressure, as well as other diagnoses, and as a result, Plaintiff has a disability within the meaning of the ADA.

102.    Plaintiff's disabilities under the ADA are qualified, meaning that, with reasonable accommodation, she can perform the essential functions and duties of her job.

103.    Section 12203(a) of the ADA makes it illegal for anyone to, "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter"

104.    Plaintiff consistently opposed the retaliation and push back she received for attempting to take reasonable time off because of her disability by, among other things, consistently reporting this unequal treatment and retaliation to Defendant.

105.    Moreover, Section 12203(b) of the ADA makes it, "...unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed..."

106.    As more thoroughly outlined in the statement of facts, Defendant interfered with Plaintiff's ability to exercise rights under the ADA and the enjoyment of those rights when, including, but not limited to:

   a. Defendant began unequally and unfairly scrutinizing Plaintiff's work only after she requested time off for her disability;
   b. Defendant delayed submitting Plaintiff's short-term disability paperwork;
   c. Defendant alleged that Plaintiff had to resign in order to receive her short-term disability benefits;
   d. Defendant attempted to make Plaintiff return to work early despite it contradicting her doctor's orders;

14

    e.  Defendant told Plaintiff that she must find a replacement or be at work, even though Plaintiff's physician had ordered her off of work;

    f.  Defendant purposely did not put Plaintiff on the schedule when she was healthy and ready to return to work;

    g.  Defendant tasked Plaintiff to train employees with less experience who made more or as much as Plaintiff; and

    h.  Other instances to be revealed during discovery.

107.    Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

108.    But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor constructively discharged.

109.    As a direct and direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

110.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

111.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## INTERFERENCE AND RETALIATION IN VIOLATION OF THE PWDCRA

112.    Plaintiff incorporates by reference the allegations set forth above as if alleged herein.

113.    At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the PWDCRA.

114.    A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

15

115.   Plaintiff has a disability within the meaning of the PWDCRA.

116.   Plaintiff's disability is qualified, meaning that, with reasonable accommodation, she can perform the essential functions and duties of his job.

117.   MCL 37.1602(a) makes it illegal to "[r]etaliate or discriminate against a person because the person has opposed a violation of this act."

118.   Plaintiff consistently opposed the retaliation and push back she received for attempting to take reasonable time off because of her disability by, among other things, consistently reporting this unequal treatment and retaliation to Defendant and continually following up with HR regarding her time off. However, this only led to further retaliation.

119.   Moreover, MCL 37.1602(f) makes it illegal to, [c]oerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of... any right granted or protected by article 5."

120.   As more thoroughly outlined in the statement of facts, Defendant interfered with Plaintiff's ability to exercise rights under the ADA and the enjoyment of those rights when, including, but not limited to:

   a.   Defendant began unequally and unfairly scrutinizing Plaintiff's work only after she requested time off for her disability;
   b.   Defendant delayed submitting Plaintiff's short-term disability paperwork;
   c.   Defendant alleged that Plaintiff had to resign in order to receive her short-term disability benefits;
   d.   Defendant attempted to make Plaintiff return to work early despite it contradicting her doctor's orders;
   e.   Defendant told Plaintiff that she must find a replacement or be at work, even though Plaintiff's physician had ordered her off of work;
   f.   Defendant purposely did not put Plaintiff on the schedule when she was healthy and ready to return to work;
   g.   Defendant tasked Plaintiff to train employees with less experience who made more or as much as Plaintiff; and

16

h.   Other instances to be revealed during discovery.

121.   Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

122.   But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor constructively discharged.

123.   As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

124.   As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

125.   Plaintiff requests relief as described in the Prayer for Relief below.

<u>**COUNT V**</u>
**INTERFERENCE/RETALIATION AND DISCRIMINATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S. 2601, et seq. ("FMLA")**

126.   Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

127.   At all material times, Defendant was an employer and Plaintiff an employee, covered by, and within the meaning of the FMLA.

128.   A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

129.   Plaintiff has worked for Defendant for over a year.

130.    Nearly every time Plaintiff's physician ordered her out of work to because of a serious medical condition or treatment to her disability, and as a result, take FMLA leave, Plaintiff notified Defendant with as much notice as her health would permit.

131.    As a result, Defendant had actual and constructive notice that Plaintiff needed and qualified for FMLA leave.

132.    29 U.S. 2615(a)(1), makes it, "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title…"

133.    As alleged in the statement of facts, Defendant routinely deny, or at the very least, restrain or interfere with Plaintiff's ability to take leave to treat her serious health conditions.

134.    Moreover, 29 U.S. 2615(a)(2), makes it, "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title…"

135.    As alleged in the statement of facts, Defendant maintained a practice of discriminating against Plaintiff for taking FMLA leave, at one point, attempting to trick Plaintiff into signing discharge papers, and ultimately leading to Plaintiff's constructive discharge.

136.    In further violation of the FMLA, Defendant did not take proper safeguards to ensure Plaintiff's medical records were separate and confidential.

137.    Plaintiff's medical conditions and diagnoses were common knowledge to Plaintiff's co-workers adding to the intimidating and embarrassing working environment.

138.    Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

139. But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor constructively discharged.

140. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

141. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

142. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

143. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

144. At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the ADA, 42 U.S.C. §§§ 12111 (4) 12111(2); 12111(5).

145. A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

146. Plaintiff has a disability within the meaning of the ADA, 42 U.S.C. § 12102.

147. Plaintiff's disabilities under the ADA are qualified, meaning that, with reasonable accommodation, she can perform the essential functions and duties of her job.

148. Plaintiff notified Defendant, in writing and verbally, that she needed an accommodation to enable her to perform the specific requirements of the job.

149. Plaintiff's requested accommodation, including but not limited to allowing Plaintiff to not work on occasion, as ordered by her physician.

150. The ADA, 42 U.S.C. §12112, prohibits an employer from discriminating against an employee on the basis of disability.

151. Defendant violated the ADA, 42 U.S.C. §12112, when it engaged in the following, including but not limited to: demanding that Plaintiff find a replacement for her own shift if her physician says she is too ill to work, demand Plaintiff work despite her physician's orders, continuing to demean and scrutinize Plaintiff's work with knowledge that that action has a direct and adverse effect on Plaintiff's health, not allowing Plaintiff to leave work to go to the emergency room and making her wait until after her shift instead, etc.

152. Defendant's said unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

153. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VII
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE PWDCRA

154. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.\

155. At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the PWDCRA, MCL 37.1201 et seq.

156. A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

157.   Plaintiff has a disability within the meaning of the PWDCRA, MCL 37.1103(e).

158.    Plaintiff's disabilities under the PWDCRA are qualified, meaning that, with reasonable accommodation, she can perform the essential functions and duties of her job.

159.   Plaintiff notified Defendant, in writing and verbally, that she needed an accommodation to enable her to perform the specific requirements of the job.

160.   Plaintiff's requested accommodation, including but not limited to allowing Plaintiff to not work on occasion, as ordered by her physician.

161.    The PWDCRA, MCL § 37.1202, prohibits an employer from discriminating against an employee on the basis of disability.

162.   Defendant violated the PWDCRA, MCL § 37.1202(1)(g), when it engaged in the following, including but not limited to: demanding that Plaintiff find a replacement for her own shift when her physician ordered that she was too ill to work; demanding that Plaintiff work despite her physician's orders; continuing to demean and scrutinize Plaintiff's work with knowledge that said action had a direct and adverse effect on Plaintiff's health; and not allowing Plaintiff to leave work to go to the emergency room and making her wait to leave until after her shift.

163.   Defendant's said unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

164.   Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VIII
## HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, et seq. ("Title VII")

165.   Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

166.   At all material times, Plaintiff was an employee and Defendant was an employer covered by, and within the meaning of Title VII.

167.   A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

168.   Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

169.   Defendant intentionally created an environment, more fully laid out in the statement of facts and herein the complaint, in which Plaintiff was made to choose between her health and her ability to financially support herself.

170.   Moreover, as a result of a manipulative scheme Defendant implemented to systematically force certain employees that matched Plaintiff's description to either quit or be fired, further intensified the anxiety filled, intimidating, and hostile work place environment.

171.   Finally, Defendant and all of Plaintiff's co-workers knew specifically of Plaintiff's serious medical conditions and how those conditions were triggered and even exasperated by stressful working conditions. However, when work caused Plaintiff's symptoms to appear, that was when Defendant's agents would retaliate the most (e.g., by attempting to trick Plaintiff into signing resignation papers to receive her FMLA and short-term disability).

172. This type of conduct was intended to, and did interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

173. Defendant's hostile work environment was culminated intentionally, with malice, or with reckless indifference to Plaintiff's rights.

174. But for Defendant's illegal discrimination and retaliation, and the environment that that discrimination and retaliation created, Plaintiff would not have been damaged nor constructively discharged.

175. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

176. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

177. Plaintiff requests relief as described in the Prayer for Relief below.


### <u>COUNT IX</u>
### HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101, et seq. ("ELCRA")

178. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

179. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of the ELCRA.

180. A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting

Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

181.   Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

182.   Defendant intentionally created an environment, more fully laid out in the statement of facts and herein the complaint, in which Plaintiff was made to choose between her health and her ability to financially support herself.

183.   Moreover, as a result of a manipulative scheme Defendant implemented to systematically force certain employees that matched Plaintiff's description to either quit or be fired, further intensified the anxiety filled, intimidating, and hostile work place environment.

184.   Finally, Defendant and all of Plaintiff's co-workers knew specifically of Plaintiff's serious medical conditions and how those conditions were triggered and even exasperated by stressful working conditions.  However, when work caused Plaintiff's symptoms to appear, that was when Defendant's agents would retaliate the most (e.g., by attempting to trick Plaintiff into signing resignation papers to receive her FMLA and short-term disability benefits).

185.   This type of conduct was intended to, and did interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

186.   Defendant's hostile work environment was culminated intentionally, with malice, or with reckless indifference to Plaintiff's rights.

24

187. But for Defendant's illegal discrimination and retaliation, and the environment that that discrimination and retaliation created, Plaintiff would not have been damaged nor constructively discharged.

188. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

189. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

190. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT X
## DISCRIMINATION ON THE BASIS OF PLAINTIFF'S SEX IN VIOLATION OF TITLE VII

191. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

192. At all material times, Plaintiff was an employee and Defendant was an employer covered by, and within the meaning of Title VII.

193. A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

194. Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to harass or discriminate an employee on the basis of their sex.

195. Plaintiff is a woman, and accordingly, is a member of a protected class.

196. Plaintiff was subjected to conduct on the basis of her status as a member of this protected class including but not limited to the following:

a. Plaintiff was consistently subjected to mistreatment and had her work scrutinized excessively, unlike male employees;

b. Defendant and its agents subjected Plaintiff to its systematic practice of promising raises and bonuses but not fulfilling said promise, and when the employee pursued these contractual promises, Defendant would retaliate against the employee until the employee quit or was terminated – which practice was used primarily, if not exclusively, on black female employees;

c. Upon information and belief, no man has ever been required to work against his doctor's orders;

d. Upon information and belief, Defendant did not attempt to force any male employees into singing discharge papers in order to receive short-term disability benefits;

e. Upon information and belief, no male employee was retaliated against for requesting that disability paperwork be submitted;

f. Defendant consistently strong-armed and bullied Plaintiff in ways that male workers were not; and

g. Other instances to be revealed during discovery.

197. Plaintiff notified Defendant and its agents of the unwelcomed conduct or communication by consistently informing Defendant and its agents of issues she was having with retaliation and the fact that she had never received her promised raises.

198. However, Defendant failed to remedy the unwelcomed conduct.

199. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

200. But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor constructively discharged.

201. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

202. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

203. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT XI
### DISCRIMINATION ON THE BASIS OF PLAINTIFF'S SEX & GENDER IN VIOLATION OF THE ELCRA

204.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

205.    At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the ELCRA.

206.    A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

207.    Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to discriminate against an employee on the basis of that employee's membership in a protected class.

208.    Plaintiff is a woman, and accordingly, is a member of a protected class.

209.    Plaintiff was subjected to conduct on the basis of her status as a member of this protected class including but not limited to:

    a.  Plaintiff was consistently subjected to mistreatment and had her work scrutinized excessively, unlike male employees;

    b.  Defendant and its agents subjected Plaintiff to its systematic practice of promising raises and bonuses but not fulfilling said promise, and when the employee pursued these contractual promises, Defendant would retaliate against the employee until the employee quit or was terminated – which practice was used primarily, if not exclusively, on black female employees;

    c.  Upon information and belief, no man has ever been required to work against his doctor's orders;

    d.  Upon information and belief, Defendant did not attempt to force any male employees into singing discharge papers in order to receive short-term disability benefits;

    e.  Upon information and belief, no male employee was retaliated against for requesting that disability paperwork be submitted;

    f.   Defendant consistently strong-armed and bullied Plaintiff in ways that male workers were not; and

    g.   Other instances to be revealed during discovery.

210.    Plaintiff notified Defendant and its agents of the unwelcomed conduct or communication by consistently informing Defendant and its agents of issues she was having with retaliation and the fact that she had never received her promised raises.

211.    However, Defendant failed to remedy the unwelcomed conduct.

212.    Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

213.    But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor constructively discharged.

214.    As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

215.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

216.    Plaintiff requests relief as described in the Prayer for Relief below.

## <u>COUNT XII</u>
## DISCRIMINATION ON THE BASIS OF PLAINTIFF'S AGE IN VIOLATION OF THE ELCRA

217.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

218.    At all material times, Plaintiff was an employee, and Defendant her employer covered by, and within the meaning of the ELCRA.

219.    A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting

Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

220. Plaintiff is a member of a protected class per the ELCRA because she was born on March 31, 1976 and is 42 years old.

221. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to discriminate against an employee on the basis of their age.

222. Defendant violated the ELCRA when, among other things laid out herein and in the statement of facts, it attempted to have Plaintiff terminated or force her to resign and fill her position with a younger, healthier employee.

223. Plaintiff, like the other older employees, did not receive the same internal support that younger, less costly, and presumably healthier employees received.

224. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

225. Further, upon information and belief, the raise structure that Plaintiff was informed of the month before she was constructively discharged has a disparate impact upon older employees.

226. Plaintiff notified Defendant of the unwelcome conduct and communications. However, Defendant failed to remedy the same.

227. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

228. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

229.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT XIII
## DISCRIMINATION ON THE BASIS OF PLAINTIFF'S RACE IN VIOLATION OF THE ELCRA

230.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

231.    At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the ELCRA.

232.    A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

233.    Plaintiff is a black woman of African-American decent, and accordingly, she is a member of a protected class per the ELCRA.

234.    Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to discriminate or harass an employee on the basis of that employee's membership in a protected class.

235.    Defendant violated the ELCRA when, among other things laid out herein and in the statement of facts, it attempted to have Plaintiff terminated or to make the work environment so intolerable that Plaintiff would be forced to resign.

236.    Upon information and belief, Defendant's discriminatory practices were used only with black female employees, including that Plaintiff was paid the same or less per hour than new, white employees with less or experience whom Plaintiff was forced to train.

237.    Plaintiff notified Defendant and its agents of the unwelcome communication and conduct. However, Defendant failed to remedy unlawful practices.

238.  Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

239.  But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor constructively discharged.

240.  As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

241.  As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

242.  Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT XIV
## RETALIATION IN VIOLATION OF THE ELCRA

243.  Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

244.  At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the ELCRA.

245.  A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

246.  Defendant's conduct, as alleged herein, violated M.C.L 37.2701(a), which makes it unlawful to "[r]etaliate or discriminate against a person because the person has opposed a violation of this act…"

247.  Plaintiff was retaliated against, including, but not limited to:

    a.  When she consistently opposed the unequal treatment and scrutiny she received compared to other white and male employees;

    b.  The manipulative firing by Defendant when it came to black females;

    c.  The fact that Plaintiff was being retaliated against with extra delay for attempting to have Defendant submit paperwork for her short-term disability; and

    d.  The fact that Plaintiff made less and/or the same amount of money as newly hired white and/or male employees with less experience and presumably less skill, and Plaintiff was asked to train these individuals.

248.    Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior, because Plaintiff consistently, verbally attested to bad actions and even filed multiple grievances.

249.    After Plaintiff engaged in protected activity, Defendant and its agents thereafter harassed Plaintiff and took several adverse employment actions against her because of that activity, as alleged in the statement of facts and herein, subjecting Plaintiff to severe or pervasive retaliatory harassment, including but not limited to:

    a.  Creating an atmosphere of unworkable hostility at Plaintiff's workplace;
    b.  Telling Plaintiff, seventeen months after she was promised a raise, of a new raise structure for which she did not qualify;
    c.  Being forced to work despite the fact that her doctor ordered her not to work;
    d.  Purposely being left off of the schedule when her doctor reinstated her to work;
    e.  Being constructively discharged; and
    f.  Other instances to be discovered.

250.    Plaintiff notified Defendant and its agents of the unwelcomed conduct and/or communication, and Defendant failed to remedy it.

251.    Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

252. But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor constructively discharged.

253. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

254. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

255. Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT XV
### PAY DISCRIMINATION IN VIOLATION OF THE ELCRA

256. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

257. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the ELCRA.

258. A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

259. Plaintiff, who had medical assistance experience, was initially offered her position at the rate of $14.00 per hour.

260. However, Defendant's male and/or white employees with less or the same experience as Plaintiff made more than Plaintiff when they were initially hired.

261. Plaintiff never received a raise throughout her employment with Defendant, despite never having received a negative review.

262.    Moreover, upon information and belief, Defendant pays similarly situated male employees $15.00 per hour.

263.    In failing to pay Plaintiff a wage equal to similarly situated employees, Defendant violated the ELCRA, MCL 37.2101 et seq., which makes it unlawful to pay employees of the opposite sex differently for equal work.

264.    As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

265.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

266.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT XVI
## EQUAL PAY ACT – GENDER BASED WAGE DISCRIMINATION

267.    Plaintiff incorporates by reference all allegations in the preceding paragraphs as alleged herein.

268.    At all material times, Plaintiff was an employee, and Defendant was an employer, within the meaning of Federal Standard Labor Act, 29 USC 206, et seq ("FLSA").

269.    A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

270.    Plaintiff, who had medical assistance experience, was initially offered her position at the rate of $14.00 per hour.

271. Defendant's male employees with less experience made the same wage as Plaintiff at the time of their hiring.

272. Plaintiff never received a raise throughout her employment with Defendant, despite never having received a negative review.

273. Upon information and belief, the vast majority of similarly situated male employees, who worked the same length of employment as Plaintiff, received raises in their compensation.

274. Moreover, upon information and belief, Defendant pays similarly situated male employees $15.00.

275. In failing to pay Plaintiff a wage equal to other male managers, Defendant violated Section 6 of the Fair Labor Standards Act, 29 USC 206(d), which makes it unlawful to pay employees of the opposite sex differently for the same work.

276. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

277. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

278. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT XVII
## BREACH OF CONTRACT

279. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

280. Defendant, through its agents, promised Plaintiff a $2.00 raise once she had accrued six months of work experience.

281.   A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

282.   Plaintiff accepted the job and remained in her position, despite the fact that she was taking an pay-cut to work with Defendant based upon the promise of this raise.

283.   Plaintiff relied on this raise, making long-term financial decisions which factored in this added income.

284.   Despite working well over six months, Plaintiff never received the agreed upon raise.

285.   Plaintiff was not informed until July of 2017, nearly seventeen months after she was initially promised the raise, that she did not qualify based upon criteria of which Plaintiff was never made aware.

286.   As a direct and proximate result of Defendant's decision to deprive Plaintiff of her $2.00 raise, Plaintiff lost significant monetary damages and time in attempting to enforce the agreement.

287.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

288.   Plaintiff requests relief as described in the Prayer for Relief below.

## <u>COUNT XVIII</u>
## WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY

289.   Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

290.  It is the longstanding public policy of the State of Michigan that there are three exceptions to the employment at-will doctrine, and an employee can be found to be liable for wrongful discharge, they are:

> (1) explicit legislative statements prohibiting the discharge, discipline or other adverse treatment of employees who act in accordance with a statutory right or duty;
> (2) where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course or employment; and
> (3) where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment.[2]

291.  Plaintiff's constructive discharge came as the result her fearing for her health as a result of Defendant's unwillingness to grant her the right to take time off clearly, as conferred by well-established legislative enactments, specifically including, but not limited to, the FMLA, the ADA, the PWDCRA, and the public health code.

292.  Moreover, the FMLA, ADA, and PWDCRA have explicit language that prohibits the discharge, discipline, or other adverse treatment of Plaintiff. However, Defendant clearly retaliated against Plaintiff for attempting to protect her rights laid out in the statutes.

293.   As a result of Defendant's actions, and consequent harms caused, Plaintiff has suffered such damages in an amount to be proven at trial.

294.  Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT XIX**
**INVASION OF PRIVACY – INTRUSION UPON SECLUSION AND PUBLIC DISCLOSURE OF PRIVATE FACTS**

295.  Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

---

[2]  *Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 695-96 (1982).

296.   Defendant, by and through its agents Ms. Sanders and Ms. McCarthy, consistently and routinely made Plaintiff's medical information publicly available, and even worse, used this information against her.

297.   A respondeat superior relationship existed because Ikisha McCarthy, Diane Lewis, and Anita Sanders had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

298.   Defendant's agents routinely discussed Plaintiff's medical condition and issues with Plaintiff's co-workers.

299.   Discussing Plaintiff's most intimate health details would be highly offensive to a reasonable person, and the public has absolutely no legitimate concern over such information. As a result, the publication of said health information constitutes the tort of public disclosure of private facts.

300.   Moreover, Defendant's agents received this information in a position of authority, and Plaintiff expected them to use this information to protect and help Plaintiff.

301.   Plaintiff's medical history, records, and diagnoses are secret and private subjects that Plaintiff has a right to keep private.  Defendant's agents abused their authority in their professional capacity, and, as a result, the decision to publish this information constituted an intrusion upon seclusion.

302.   As a result of Defendant's actions, and consequent harms caused, Plaintiff has suffered such damages in an amount to be proven at trial.

303.   Plaintiff requests relief as described in the Prayer for Relief below.

**RELIEF REQUESTED**

PLAINTIFF, BARBARA BUCKNER, respectfully requests that this Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  December 28, 2018

Respectfully Submitted,

/s/ Connor Gallagher
Carla D. Aikens (P69530)
Connor B. Gallagher (P82104)
CARLA D. AIKENS, P.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
connor@aikenslawfirm.com
